Good morning, Your Honors. I'm Richard Bazelon. I represent the Pellants in this case, who would like to request five minutes for rebuttal. Thank you. I'm going to focus my argument on the preclusion issue, which was the ground on which the District Court ruled. And the issue is whether the Floregs federal takings claim is barred by claim preclusion, where state courts, in an inverse condemnation case, held that state law does not provide for compensatory damages for an unlawful de jure condemnation. The history of this case in the federal courts reads like a Kafka novel. Or John Dice versus John Dice. In the first federal case, the Floregs were doubtful that there was a remedy under state law. They proceeded directly to federal court with their takings claim. And the Redevelopment Authority took the position that the matter needed to be referred to state court pursuant to Williamson. That's an exhaustion. I look at it as an exhaustion doctrine. It's really a whiteness doctrine. That may be, yeah. And basically told the District Court that there was a remedy under the eminent domain code. And that is set forth in the RDA's brief to the District Court in the first federal case, Joint Appendix 309 to 312. Mr. Bassler, I see a question. I'm sorry. Could I stop you right there? Because you're walking us through the lengthy procedure of this case, which I'm sure my colleagues are familiar with. But either way, you just referred to the eminent domain code. And you could help me understand this case by responding to this question. Is this case, amidst all the procedure, two state actions, two 1983 actions, about seeking compensation, just compensation, for a type and form of taking the compensation for which is not otherwise provided for under Pennsylvania's eminent domain code? Certainly, the answer to the latter part of your question is yes. The history about the two federal court and two state court, I'm not sure which ones you're referring to. But yes, I think that the heart of the matter is that what the state court determined was that there was no state procedure for providing just compensation in this case. Because there was no procedure that governed a case in which a de jure, a condemnee who successfully challenged a de jure condemnation was seeking damages for the loss of his property during the condemnation proceedings. Does that answer your question, Judge? Yes. The, in the inverse condemnation case, the RDA changed its position, took the position that... Isn't the inverse condemnation case a second state court action? Your Honor, there was a, the only prior state court action... Was the condemnation action. Was the condemnation action. Yeah, the filing of the Declaration of Taking Constitutional Action. In 1996, yes. Yeah, okay. That case was fully litigated with the result the condemnation was set aside. And went up to the Commonwealth Court. So that's state court action number one. Yes. So we're talking now state of court action number two, which is the inverse condemnation case. And in that case, the RDA took the position that there was no remedy under state law. The Commonwealth Court said there was a remedy. There had been a taking which violated the state constitution. The floors were entitled to compensation. The Commonwealth Court never reached that issue. And in fact, expressly, expressly in a footnote, made clear it was not reaching that issue. Simply said, regardless of what the merits of the taking claims are, there is no procedure under state law. Now, that should have ended it in terms of the reason that we were in state court in the inverse condemnation case was pursuant to the Supreme Court's opinion in Williamson, which said that you need to find out whether the state has a procedure for providing compensation. We now had a ruling because the Supreme Court denied review of the Commonwealth Court. We now had a ruling from the state courts that there was no procedure for providing compensation. So the inquiry arguably required by Williamson had been satisfied with the result. There was no state procedure. There was nothing, therefore, to in any way stand in the way of the floors moving ahead in federal court with their condemnation case, which they did when they filed the second case. Couldn't they have made their federal claim at that time? I beg your pardon? Couldn't they have made their taking claim at that time? At what time, Judge? The second state court action. They could have, but they weren't obliged to, and they did not. And they weren't obliged to because of the England reservation? No, they weren't obliged to because there is nothing in the law that requires a condemnee in the situation of a referral to state court under Williamson to present his federal claim. If that were the law, Judge, you would be effectively annulling federal jurisdiction of a federal takings claim. San Remo does not do that. San Remo says that if you go to state court pursuant to Williamson and the state court adjudicates the taking claim, that you're bound by the adjudication. But if the state court refuses to adjudicate because there is no remedy under state law, there is no obligation to present the federal claim. But doesn't San Remo say you can have both? You can attach your federal claim to the state action, to the state claim? You can. You can do that, but you're not obligated to do it. And Judge, let me say that after San Remo, if you don't do it, in a sense you proceed at your own risk because if the state court adjudicates the taking claim, you're bound. That's right. You take your federal action to the state court. The Supreme Court has said, you know, state courts are competent to decide federal claims. Right. And if, but that doesn't mean that a condemnee is obligated to present his federal claim. He can and the state court can rule. And if he doesn't and the state court rules on the state issues, to the extent that the state issues are co-existent with or concurrent with the federal issues, he's bound. But if the state court doesn't rule because under Williamson they take the position that there is no procedure to provide a remedy, then there is no basis for requiring that the federal claim be submitted. Let me take you on a slightly different path, Judge. Does Pennsylvania or has our court said that you still have an England reservation? I mean, is that still a viable doctrine? I think that the viability of England in a takings claim is very much diminished by San Remo, but it makes no difference in this case. What's important in this case is that for whatever reason, the federal claim was not presented and there was no adjudication whatsoever of any claim on the merits. And there is no case that holds that you waive a federal claim in a case in which the state court never reaches the merits of the related state law claim. I know of no case that holds that. And respectfully, it... Don't worry about the late. I think there's a lot of issues in this case if my colleagues are willing. Just go until we stop you. I appreciate that. And the same will apply to your side. Under the Wade case that we relied upon, which was decided by this court, the holding was that a plaintiff who did not submit a 1983 claim did not, where the underlying claim grew out of the same transaction, was not barred thereafter from submitting his 1983 claim in federal court because the state court did not reach the merits of the state claim growing out of the same transaction. The state court had held that the claim was barred by immunity. It was a suit against, as I recall, police officers or city officials. But under the federal statute, the federal claim, immunity was not a defense. This court held in Wade that because there had never been a ruling on the state claim growing out of the same transaction, the case had never... There was no adjudication on the merits that the plaintiff could bring a separate and later 1983 claim growing out of the same transaction. That case is good law. In addition, this court has held that... Has addressed Pennsylvania preclusion law on a number of occasions. The Wade case that I mentioned also has an alternative case. And that is that under Pennsylvania preclusion law, a plaintiff must have a fair and full opportunity to present his claim in state court. Well, that's why I asked you the question that I asked you before. You could have... You can see that you could have included the federal takings claim in the second state proceeding. Race judicata covers not only that which was raised, but that which could have been raised, I think, from when I taught it. So why shouldn't race judicata apply here? Because claim preclusion also requires that there be an adjudication on the underlying claims in the state court. And there was none in this case. There is no requirement to present your... Let me put it this way. You don't waive your federal claim if in the earlier case growing out of the same transaction, there is no adjudication on the merits. And that is totally consistent... I'm confused. Which underlying case are you talking about? The de facto or the de jure? I'm sorry. I'm talking about the inverse condemnation case, the second. The de facto? Yes. And you did not have a full and fair opportunity to present this issue to that court? Our position on that, Judge, is that the law at the time that we brought that action was generally understood that you had no obligation to present a federal claim in state court and that you would not be precluded if you did not do so. We cite those cases in our brief and... They're at our brief at page 44. Even, Judge, if I could just for a second, in the San Remo case, the Supreme Court noted that the Second Circuit in Santini had come to an entirely different conclusion. Wade, which is the Third Circuit case, said that if a plaintiff has reasonable grounds to believe that there is no obligation to present the claim, that that excuses a preclusive effect under Pennsylvania claim preclusion law. So yes, that is one of our positions. One more question. We have said with respect to New Jersey cases that there is no obligation that the state eminent domain code adequately protects those aggrieved in the Elkridge, Seattle City case. What's different about the law in Pennsylvania than in Jersey? Judge Niger, that's... Well, why did not that case be applied here? That's a very broad statement, that the eminent domain code adequately protects rights. I think you have to look at the particular case. And in most cases, I wouldn't come to a contrary conclusion with respect to the Pennsylvania eminent domain code. However, Judge, the fact of the matter is that in this case, it does not. In this case, where there is a de jure condemnation, which is determined to be unlawful, and there's been a taking of the condemned these rights as a result of that, the only remedy provided by the eminent domain code is counsel fees and out-of-pocket costs, which is not compensation for the loss of... And engineering costs also. Thank you, Your Honor. Appraisal costs, I think, also. But that is not... And the Commonwealth Court was clear about that in its opinion in this case. That is not making the condom legal. It is not compensation for the loss of property rights. So what was lost? What damages, assuming the theory of taking here, can be given cognizance? Just how was your client damaged in any sense? They retained use and enjoyment of the real property throughout that period, did they not? And continued to operate their business? They continued to have possession and they continued to operate the business. So is the theory that somehow they did not, because of who held title, have the right to alienate the property in any way? Because I can't conceive of any other damage that would be compensable here. And if that's the theory, doesn't the record demonstrate that they made no effort and didn't really have any interest in seeking to alienate the property during that time? Well, Your Honor, to take the last point first, whether they had an interest to alienate the property, they didn't have the ability to do it. Remember, this condemnation proceeding took place, as I recall, over a five-year-plus time period. At the very least, I understand there would have been a cloud on the title over that period of time. At the very least. I didn't have title to convey, Your Honor. But apart from that, Judge, as a practical matter and as a legal matter, you can't do anything with your property. This plant was in poor condition. It needed to be upgraded. They couldn't invest. They couldn't come up with development plans. They couldn't plan for their future. They were stuck in a situation where they could do nothing. First of all, you don't have title. You can't come in and apply for permits. But secondly, if you don't have title, you can't build improvements. If at the end of the day, your preliminary objections to the condemnation, you lose, then you've spent all this money and you're out of pocket and you can't get any compensation for it. They were effectively stymied from doing many, many of the important things that a landowner can do. Now, assuming all that to be actually provable, how do you get around BODCA, which seems to limit just what you are trying to get by saying that indirect costs are generally not recoverable, that we're dealing with the property, not the person? How do you get around that? Well, these are not indirect costs. These are damages for loss of property rights. I mean, for example, just to give you one analogy, this one could liken the situation that the Florbs were in to a situation in which somebody had an option to buy their property. And if somebody had come to them and said, we want an option to buy your property for whatever the five and a half years, they would have been entitled to compensation. They would have been given away their right to alienate the property. They couldn't have developed the property. But they also say in the Monongahela case that the damages, the compensation is for the property, not for the owner. You're talking about loss to the owner. And that seems to go against the Monongahela case. No, Your Honor. It's always the property owner. It's damage to the property in terms of the property rights that the owner holds. It's damage to the property rights that the, it's always the owner. Condemnation proceedings are not in rem proceedings. The compensation goes to the owner if it's subject to a lease. But it's for the property. I beg your pardon? But it's for the property. It's for loss of property rights, Judge. It's for the taking of property rights. And that is what, you know, that is what the due process clause with respect to taking without just compensation is. It's a taking of property rights without just compensation. But your argument would be that under the federal cases that federal law would be broader than Pennsylvania law. I'm saying that without getting, well, Your Honor, Judge Smyth of the Court of Common Pleas held that this was a taking under state law that entitled my clients to compensation. So I disagree that under state law my clients would not be entitled to compensation. And the only court that has ever ruled on the case has held in favor of my clients. But clearly under the federal authority the taking of property rights for a substantial period of time, fundamental property rights, is a compensable taking. Then you're arguing a de facto taking before us. No. It depends on your definition, Judge, because the reason I'm inclined to say no to you is that there was a declaration of taking, what's known as a de jure condemnation. Usually de facto is understood to mean a taking by virtue of what the government does as opposed to the filing of a condemnation. But what is so important about the filing of a condemnation is that it is clear under Supreme Court authority that that is a taking. It is a direct taking of property. And so the federal cases that deal with direct taking and hold that loss of property rights are compensable and they're direct taking apply to this case. Right. I'm trying to lead you in a different direction. I'm sorry. Maybe I'm not being articulate. There was a de jure taking. Yes. They took the property. Right. You got it back. But you seem to be arguing now that in a de facto sense they took a property right from you and that is the right to alienate this property or do something with it for five years. Well, it wasn't de facto. It was a direct taking. When the declaration of taking was filed, my clients no longer had title to the property. Right. It was a direct taking. This is why I tried to walk a little bit through the procedure. That was the first state lawsuit. The second state lawsuit was an inverse condemnation proceeding, was it not? Correct. Under Williamson. And that was believed by the district court to be required under the Williamson case for the sole purpose, for the sole purpose under Williamson of determining whether state law had a procedure for giving compensation to the deprivation of property rights for a condemnee who successfully challenged a de jure condemnation. It wasn't a case. In the end, your position is the eminent domain code does not have a section that provides explicitly for such damages. It's not my position, Judge. It's the position of the Pennsylvania State Courts through the Supreme Court of Pennsylvania in the inverse condemnation case. But it is my position that once that is established, that the purpose of Williamson is satisfied and that the condemnee has a right to proceed on its federal claim in federal court because now the claim is right. Okay, Mr. Vasson, I think now is time to hear from the appellees. I want to thank Judge Smith for stating that last question much better than I did. I'm sorry it took me a while to catch it. Thank you. Mr. Smith, I think you start. Good morning and good evening. My name is Joe Smith. It's hard to know which of many red herrings that have been trailed across the path to address first, but let me start with the notion that somehow the authority took an inconsistent position in the course of this litigation. This has been said over and over again by the floor entities. It's been rejected by fact because the authority said consistently in the early proceedings before Judge Davis in the first federal action that any de facto taking of the property that occurred was fully within the eminent domain code. The code provides the sole and exclusive remedy. Now the authority was not conceding that there was a taking within the constitutional sense that required that there be any award of damages. And in fact in that very same pleading we had a section entitled plaintiffs have not stated a claim for an unconstitutional taking. And I respectfully submit that under Penn Central and other cases of the Supreme Court's jurisprudence this can in fact be seen, this incidental quote taking as part of the de jure declaration of taking was not in fact a taking which rises to a constitutional level. But let me address some of the other issues that Mr. Bazelon has addressed. First of all the suggestion that under Williamson one just goes over to the state court for a ruling about whether or not there is a procedure. That simply stands Williamson on its head and the Supreme Court in San Remo clearly said that when under Williamson a case is sent back or is reinstituted in the state court it's there to be adjudicated. You're not simply asking a question. Asking a question is the classic English situation. The classic English situation the federal court has a question on its mind but thinks that the state courts could answer the question and so it abstains from proceeding further in order to allow the state court to answer the question. It should be noted that in England and all these other cases where there was some kind of reservation that was permitted the federal court in this case Judge Davis had jurisdiction in the first place. But under Williamson the federal court doesn't have jurisdiction. It's not in a position to abstain, hold on to the lawsuit and let the state courts answer a question which when answered can come back to the state court. Judge Davis clearly held that he didn't have jurisdiction. He was asked to stay the case. He said no I don't have jurisdiction. I can't stay the case. The matter goes over and under San Remo it's adjudicated and that's what happened here. Now Mr. Bazelon persists in saying that there wasn't in fact an adjudication. Yeah I was just going to ask you about that. Where was the adjudication on the takings claim? Well first of all. Where or when? Yeah. Yeah. The adjudication occurred right from the outset when the plaintiffs filed a petition for the appointment of a board of view in order to determine its damages. Well Mr. Smith an adjudication has to come from a court. That's right. Okay. So your answer didn't say what court or when. Thank you Your Honor. I'll address that right now. The proper procedure, this is a state court proceeding because the proper procedure for raising questions about whether or not there's an entitlement is to file preliminary objections to the petition for board of view. And unlike many common pleas situations when you file preliminary objections to a board of view you're raising substantive questions on the merits. So that's the vehicle under the eminent domain code and in the Pennsylvania judicial process for getting to the merits of whether or not there is a claim. And that's precisely what the authority did. It raised preliminary objections to the petition for the board of view. Now that means that in your view or does it mean that the England reservation was ineffective? It was totally ineffective. Was it objected to by you? Did you ever object to the England reservation during the state proceedings? In the most graphic of ways we fought in the first federal courts. There was nothing federal about this. We said you need to go to the state court. So we objected through the very process of filing the motion to dismiss in the federal court. But I'm talking about specifically with respect to the England reservation which appears as a footnote in the petition for appointment of a board of view. It's there. It's clear. Aren't you under an obligation to object to it? Isn't it critical if you don't? Well first of all it was nugatory under the Williamson and. If it is don't you have to raise that? Oh I don't think so. We made our views known in the clearest possible way by litigating the question of whether or not this belonged in federal court. I don't believe there's any duty. There's no affirmative duty on our part to object if what the plaintiff decides to do is to put one hand behind its back and not raise its federal arguments in the eminent domain proceeding. Well had there been any Pennsylvania appellate court decision saying we don't accept an England reservation? I mean wasn't that the sort of brewing issue in various courts? I'm not sure that I understand the question. Well you're saying that as I understood you that the England reservation was nugatory. I think that was your words. You say it but did any Pennsylvania appellate court say it? In this particular litigation it was not addressed one way or the other. Well or in any litigation in Pennsylvania. I mean how is a lawyer or a client supposed to know that you no longer had a, there was, Pennsylvania didn't recognize an England reservation. I mean you're saying it doesn't make it so. And so if you're a lawyer or a client trying to save a claim don't you have to make a claim don't you have to know, be told by a Pennsylvania court, someone? Your Honor I'm confident. I mean you know the England reservation was used in a lot of constitutional litigation. That's correct. And how, who said it was nugatory? Well I'm confident that the Pennsylvania courts recognize an England reservation where an England reservation is in fact appropriate and was in fact made. Oh all right so that's a slightly different position than I think the one you just articulated. I guess so I can be a little clearer. In a case such as the present case where the federal court in the first proceeding did not have jurisdiction to begin with and did not in fact send the matter over to a state court for an adjudication on a particular question about which the federal court had a question, the England reservation simply doesn't arise in the first place. There's no jurisdiction in the federal court. There was nothing to ask a state court to do for it. It simply said under our law, under Williamson, this matter now has to go over to the state process to be adjudicated. And I would like to address that. How does that answer the question of the validity of the England reservation? I'm just not following you. Yeah. I mean from their standpoint they say well we didn't have to litigate it. There's no preclusion which he said was the first thing that was an issue here because they thought that they had reserved their right, their takings claim, their constitutional takings claim issue. Right or wrong I mean that was their position and now you say well they made an England reservation but it's nugatory. And how are they supposed to know that if no Pennsylvania case either here or elsewhere said it? Well the. I mean that may be a very basic simple question but. And it's answered. I just want to follow your argument Mr. Smith. It's answered among other things by San Remo in which the plaintiffs there attempted to make an England reservation and it was found not to be effective. So that I think answers the question about whether there was any effectiveness or not to the reservation. The point I think for England though is. But you didn't argue that. I didn't have to argue that Your Honor because you look one can mouth the words England but if one has not made a proper England reservation because the court, the federal court didn't have jurisdiction in the first place and there was in fact no question being posed by the state court saying give me an answer so I can proceed. It was simply a vacant exercise. Now I would like to discuss the question of whether there was a ruling on the merits. First of all as this court knows Pennsylvania takes a very expansive view of what it means to have a ruling on the merits. And Your Honor, Judge Sloviter will recall perhaps the McCarter versus Mitchum case in the course of which race judicata was held to preclude federal adjudication of a plaintiff's federal RICO claim which could have been brought the court said in a prior state action. Well in that prior state action there was a dismissal of the claim before it even got to the merits. Notwithstanding that this court said we'll recognize race judicata because Pennsylvania's state courts would recognize race judicata. This is not a case like Wade where sovereign immunity for the municipality prevented the court from even getting to first base nor was it a question of improper venue or any of the other bases that are sometimes recognized in the restatement of judgments for not giving preclusive effect to a ruling. Now one of the things that I think makes this even clearer is that the very first court that hears the preliminary objections raised by the authority to the taking petition rules on everything, rules on the constitutional basis, rules on constitutional issues, rules on the state court constitution, it says article one section ten of our constitution requires that a broader view be taken of what relief is appropriate in this situation. And as a matter of fact the Florida entities argue, they contend in their papers, that this was a ruling on the merits. So at least in their view the very first case out of the box in the second state court proceedings was a quote ruling on the merits. On the state claims. On the state claims. On the state claims. So. But the question is was it a ruling on the federal taking claim? Isn't that the issue? Yes and I think that is, that's a key question of course Your Honor. And I would respectfully suggest to you that the answer to that is yes. And I would note for example the Turner case decided by this court in 2006. In that case the plaintiff had previously litigated in the state court but it held back some of its federal, her federal arguments. And now back in the federal court was proceeding on a federal theory. Now the third circuit in Turner recognized that in Pennsylvania, as Your Honor has said here, res judicata applies not only to claims actually litigated but also to claims which could have been litigated. I don't think there's any question, and I think Mr. Bazelon has conceded, that this was a situation in which the federal constitutional issue could have been raised. And in fact the Supreme Court in San Remo expressly says a plaintiff in this kind of situation can go into the state eminent domain code proceeding and can say look under state law I'm entitled to relief and can argue in the alternative. And this is exactly what the court says. Argue in the alternative that if you don't give it to me that's a violation of the Fifth Amendment to the United States Constitution. So there's no question here that they could have done this. Now the question is maybe they didn't have to, but if you don't do it you stand at risk of being found to be foreclosed when you try to raise it again in another setting and that's exactly what happened in Turner. Okay, I think we understand your argument since there are two more people behind you. Thank you, Your Honor. Did you have any questions? Mr. Feeback. May it please the Court, good morning, Your Honor. It's Robert Feeback representing Mr. Pulver and Greater Conchahokan Improvement Corporation. Your Honor, before I start my argument. Do you, just let me ask you, do you agree with everything he said? Not quite. I'd go a little further on reading San Remo, but before I start my argument, Your Honor, I'd like the privilege of introducing to the Court my son, Michael, who's a first year student. He's been three weeks learning about the law at Temple Law School. Oh, great. I'm particularly glad to see you. There's still time to be dissuaded. Then listen to him. Your Honor, with respect to the San Remo argument, I believe that the Supreme Court went further in San Remo than even Mr. Smith argued, and I think that the appellant misread San Remo, because after saying that what you can do is say to the state court, if you find no compensation under state law, then you're in violation of the Fifth Amendment. They go on to say that if you don't do that, that's piecemeal litigation, and that's precisely what the doctrine of res judicata is intended to prevent. Let me ask you the question that's been bothering me throughout. Do you think there still is an England reservation in Pennsylvania courts? No, Your Honor. You think it's finished as a result of San Remo? Under San Remo, the Supreme Court very clearly, Your Honor, I believe said that the England reservation is limited to the Pullman situation, where you're going to have a separate and distinct question, which you reserve for the state court. In this situation, the issues are so similar and are normally coextensive that you do not have an England reservation. Did any Pennsylvania appellate court so state, as any Pennsylvania court so stated, appellate? Your Honor, I think the appellant reads your decision in Bradley as permitting an England reservation, but I think that San Remo It does, doesn't it? I mean, Bradley is a case I know something about because Judge and I learned a lot from that case. It seems to me that's what she said. But Judge Slovener also The court said Judge Slovener speaking for the court also said that there was no Supreme Court decision on the question of the scope of England, and so the court would look at what it determined to be the rationale for England rather than the holding. But what the Supreme Court in this case, it never went beyond a Pullman abstention doctrine, and the court had the exact same argument before in San Remo that is made here by appellant, which is we relied on all these cases. And the Supreme Court dismissed that at page 338 of the U.S. report when it said simply that was an erroneous expectation. That's a quote from the Supreme Court. They said that was simply an erroneous expectation, and they applied San Remo. San Remo was not a case in which they decided it prospectively. They applied it to the litigants before it, and I would submit to this court that you are bound by that, and notwithstanding that courts, perhaps including this court, misread England and people relied on it, that San Remo puts that to rest and says you shouldn't have relied on it. It was an erroneous expectation. So what we really have before us, right, putting it in simple terms, is on one hand we have an argument that they never got heard on their takings claim in the state courts because the client was relying on the England reservation, and on the other hand we have the argument that there was no longer a valid England reservation doctrine. That's pretty straightforward, right? Yes, Your Honor, but I think even beyond that, I think the record shows that that was their strategy from the beginning because even in the very first objections, preliminary objections made to the declaration of taking, they reserved their, so it wasn't a reservation initially from the federal court back to the state court proceedings. It was from the very get-go. They were trying to litigate state court claims in state court and reserve the federal claims for the federal court. And the question we have is can you do that? Correct, Your Honor, and we submit that you cannot. Okay. Thank you, Mr. Feeback. You asked for five minutes. I just wanted to briefly address the statute of limitations issue, or is the court not? Well, you asked for five minutes. Is it in your briefs? Yes. Okay. We read the briefs. You know that. Okay. Thanks. Now let's hear if Ms. Mather can do what she has to, what she's getting up to do in one minute. One minute. That'll be, that'll be... One thing Ms. Mather is going to do, I, I, I, a gentleman of the court. That's right. Thank you. You of all people. I represent, you know, I have all people, right. I'm Barbara Mather and I represent TBFA partners in this matter. I've been assigned the argument that there's no taking here. Under a jury taking, because indeed all the cases that find such a taking and find that there needs to be a remedy for such takings are cases where there are physical takings. But I think that issue is adequately addressed in the briefs and I don't intend to spend any more time on it. I would like to come back to San Remo for just a second because one of the issues that constitutional issues that he could have raised were in fact not ever made part of that proceeding and that's just not right. If you look at the Smythe opinion at the lowest level, in fact, Judge Smythe on the basis of the Pennsylvania Constitution found that there was a right to a takings recovery in this situation and that was necessarily appealed to the Commonwealth Court. I will certainly concede that the Commonwealth Court did not address it directly, but this is not a situation where it was a collateral issue. If the Commonwealth Court felt it was an issue and didn't find a remedy under the statute it would have had to address the second issue. So I think we have to infer that they did not regard that argument under the Pennsylvania State Constitution as valid. Also, before the Commonwealth Court decision came down, San Remo came down. The petitions for Alicotter were filed after that and particularly given that Smythe had already decided the Pennsylvania constitutional issues, they obviously could have been raised before the Pennsylvania Supreme Court. This case is on all fours with San Remo. The issue was raised, the issue could have been raised, and under San Remo the issue was precluded. Thank you. Thank you. I think you asked for, Mike, was it five minutes? You're entitled to that, but no more. Your Honor, I would rephrase your statement of the case. Sure. The point this case really is about is whether where there is a reference to state court to satisfy a rightness requirement, a determination by the state court that there is no remedy available under state law without any adjudication of the merits. A condomnee is thereby precluded from pursuing his federal claim in federal court. Now, both Mr. Smythe and Ms. Mather have talked about whether there is an adjudication. There simply was not an adjudication on the merits of this case. But you agree that there could have been.  I said what I agreed to, Your Honor, was respectfully. No, that's all right. I know everybody who's arguing today. What I agreed to was that we could have presented the federal claims. I didn't say anything other than that, and I said also that we were under no obligation to do so. But let me address first the notion that there somehow was an adjudication of the claims in this case. And perhaps, Your Honor, we ought to look at what the redevelopment authority said itself about the Commonwealth Court opinion. In its resistance to the petition that the Florids filed to have the Supreme Court review the Commonwealth Court, here is what the RDA told the Supreme Court of Pennsylvania. And this is a direct quote. The damages to which the plaintiffs were entitled under the eminent domain code were limited to reimbursement for their expenses. Since these had been paid, no further damages could be claimed. The Commonwealth Court never reached the authorities' other two arguments, V's, VIZ, that the trial court erred in holding that the plaintiffs were entitled to damages as though a de facto taking had occurred, and that the trial court erred by failing to hold a hearing for the purpose of determining whether a de facto taking had occurred. That's at the joint appendix at 619. The common, the RDA itself, and by the way, the RDA filed this brief in the Supreme Court of Pennsylvania after the San Ramo case. And they took the position clearly, unequivocally, there had been no ruling on the merits. And because there had been no ruling on the merits, they went a step further in what they told the Supreme Court. In their brief to the Supreme Court, they said, because there's been no ruling on the merits, we're in a bad situation here. Because now the plaintiffs can proceed in federal court on their federal claims and they can actually go back to state court and proceed in state court on their state claims. And so because of that, if you grant the petition for repeal, please consider the federal claims as well. Now that was the first time that the redevelopment authority had ever said anything about the federal claims being considered in state court. This was in a petition for aliquotter? Petition for review by the Supreme Court. Pennsylvania, correct. And that's in the record at JA 619. Furthermore, why would the redevelopment authority have asked the Supreme Court to review the federal claims if they thought there had already been a ruling which precluded the federal claims? It's like saying, we won the case but we want it to be reviewed. They knew and they said to the Commonwealth Court that the merits had never been reached and it just could not be clearer and it's most clear by the Commonwealth Court's opinion itself at footnote 5, Joint Appendix 150 where the Commonwealth Court specifically says it's not addressing these issues. The notion that there was an adjudication on the merits by the Commonwealth Court is simply completely and totally belied by the record and by the Commonwealth Court's decision in this case. Now, if there is no adjudication on the merits in the inverse condemnation case in a situation where there's been a referral to the state court under Williamson, then you never get to the question of whether or not a federal claim should have been submitted because there is no reason to have submitted the federal claim, no purpose to be served by the state court by having a state court rule on a federal claim where there's no issue before the state court. But if you do get to the issue of preclusion under state law, I want to pick up a theme which was developed in the questioning. I think you asked, Judge Sloviter, whether there was an affirmative obligation to object to the withholding of the federal claim. And there's no question, Judge, under the law in this circuit that under Bradley, which is your decision, there is that obligation. And by the way, Bradley's not the only case. Edwards versus the Ivy Club at 943 F. Second 270 also has that holding. And there is another case that so holds from the Ninth Circuit, a very interesting case called Dodd versus Hood River Company at 59 F. Third 852. The opinion was actually written by Judge Aldiser who was sitting by designation in the Ninth Circuit. But it doesn't count as Third Circuit precedent. I'm sorry? It doesn't run with the judge. I totally understand that, but I just wanted to bring to your attention that this is accepted not only in the Third Circuit but in the only other circuit that I know that is ever expressly so ruled that if there is acquiescence by the opposing party or by the courts that you cannot have claim preclusion. And here there was complete acquiescence and also there was acquiescence by the courts, I submit, because in Judge Mice's opinion where he held the taking to be unconstitutional, he never referenced any federal authority. Was the red light on his five minutes? Okay. I have to stop you. We've been patient. You have been very patient. I thank you very much. It's a very important issue and been well argued, well briefed on all sides given the identity of the lawyers that would be expected. So thank you all. Thank you, Your Honor. We'll take it under advisement. We're finished. I'll pass.